188 So. 70

SMITH v. SMITH et al.

5 Div. 289.

Supreme Court of Alabama.

April 13, 1939.

D. T. Ware, of Roanoke, and C. W. Clegg, of Wedowee, for appellant.

H. T. Burns, of Wedowee, and Whiteside & Woolf, of Anniston, for appellees.

BOULDIN, Justice.

The ultimate purpose of the bill was to make distribution of an alleged estate of a decedent among the heirs at law without administration, there being no indebtedness against the estate.

The real controversy was whether decedent left an estate.

The decedent, B. S. Smith, died in December, 1936, at the age of eighty-seven. Mrs. Smith died six years before. They had reared a large family of children, who had all married off, had families of their own and some had died leaving children. The old people lived alone on the 160 acre farm in Randolph County when Mrs. Smith died. One son, J. M. Smith, with a large family, had for many years lived in another house on the farm within a hundred yards or so of the residence of the old people. He had operated the farm as a tenant. On the death of Mrs. Smith, this son moved into the home with his father and so remained until the father's death.

On November 20, 1930, a few weeks after the death of Mrs. Smith, decedent executed to this son, Jim, a deed to 120 acres of the land on a recited cash consideration of $1500. It appears the title to the other 40 was defective or beclouded by reason of mistake in the government numbers appearing in the chain of title. The father proceeded by bill in equity to clear the title. This done, he executed to Jim a second deed to this 40 of date November 20, 1931, on a recited consideration of the sum of $100, "and further that the grantee is to take care of and maintain the grantor, B. S. Smith, the remainder of his life."

The bill, filed by the other children and grandchildren, attacks these deeds on the

ground of mental incapacity and undue influence. The trial court did not sustain this feature of the bill, and we have no occasion to consider it.

In the alternative, the bill alleged the moneyed consideration stipulated in said deeds was never paid in whole or in part; and prayed for the enforcement of a vendor's lien for the collection of the purchase money and interest thereon. Other allegations seek an accounting for personal effects of decedent alleged to have been received and consumed by respondent. Respondent admitted the execution of a note for the sum of $1500, purchase money for the land first conveyed.

The defense interposed was to the effect that within a few days after executing the second deed, the grantor decided to modify the terms of the former transactions by giving respondent all the property in consideration of his undertaking to support, care for, pay doctors bills, etc., for decedent so long as he lived; and accordingly, in the presence of the members of respondent's family declared such purpose, tore up and destroyed the $1500 note, and also a will which he had theretofore executed. An amendment to the bill challenges this alleged transaction because of undue influence. The trial court sustained this alternative of the bill, declared a lien on the 120 acres for principal and interest on the $1500 note, and decreed a sale of the property upon default in payment. Other questions were reserved.

Respondent appeals from this decree.

Counsel indulge in some discussion of a parol release of an existing obligation without a new consideration in view of Section 5643 of the Code.

On the other hand, the validity of a gift of a promissory note when fully executed, and the lawful right to modify the terms of an executory contract without a new consideration, are presented in argument. Appellant also insists that further obligations were assumed by him than those stipulated in the second deed, and that all such obligations were fully performed.

We deem it unnecessary to restate the law on these lines, nor to elaborate the well known rules touching transactions between parent and child, wherein the parent is presumed to be the dominant party, but extreme age, feebleness of mind and body, sense of dependence, and intimate family relations with one of the children intervene to reverse the normal status, and give the child a dominating influence in fact.

Suffice to say on a careful consideration of the legal evidence in the entire record we are not persuaded the court was in error in finding the respondent indebted for this $1500 purchase money, and decreeing a vendor's lien therefor.

We are of opinion, however, that some modification of his decree should be made. A brief discussion on these lines will suffice. Decedent, during his active years, was a capable, frugal man. When Mrs. Smith died in 1930, he had reached eighty years of age. He had accumulated money. Soon after executing the first deed, which was promptly put on record, he called in his children, and some grandchildren, and made a division, giving to each child, the sum of $482 in money, less indebtedness of the children respectively. At that time he required them to join in a written instrument recognizing his right to dispose of his other properties as he should desire so long as he was mentally capable, &c.

He retained $1000, which was increased to $1100 by sale of some chattels. He lost this in part by a bank failure, receiving a dividend of some 54%. He was out the expenses of clearing up title to the lands. During the six year period following the division above mentioned, he had recurring attacks due to hypertension, rendering him unconscious for a day or two at a time, and resulting in doctor's bills. The taxes on the property were paid. The record does not disclose the detailed amounts of these outlays. Whatever was left we infer went to the uses of Jim and family. Decedent owned a Chevrolet car, which was used for his convenience in being driven about, and otherwise by the family. Some farm tools and household effects went to the use of Jim and family. Without dispute Jim and his family fully performed the obligation to maintain and take care of the old man; nursed and cared for him during sickness and the helplessness of old age. In the last year or two of his life, this was specially exacting. He developed a cancerous affection on the face, became physically helpless and mentally incapacitated. Daily nursing and care of the most exacting sort continued for about a year.

It is insisted by appellees that the reduction in price of the last forty, the per-

sonal effects which went into Jim's hands, and the use of the farm, were amply sufficient to compensate for all the nursing and care, as well as outlays during this period.

Indeed, the bill seeks an accounting for the rents of the place, and all the personal effects received by respondent. This is left open by the decree.

Viewing the entire case we are impressed it was the intention of decedent that respondent should have the personal effects not consumed by him and the use of the farm. The money values recited in the deeds, under some direct and much circumstantial evidence, were intended to represent the decedent's estate for purposes of a division on his death.

Now, respondent is not given the use of the farm rent free in a decree which charges him with interest on this $1500 from the date of the deed. Nowhere is it shown when the note became due.

Let the decree be modified so as to charge the 120 acres with the purchase money $1500, with interest thereon at 6% from the date of decedent's death, December 31, 1936, and enforcing a vendor's lien for such sum.

This done this family lawsuit should end.

There is no evidence any note was ever given for $100 the money consideration recited in the second deed, which acknowledges receipt thereof.

Let the costs of appeal be paid from the proceeds of the lands, as above decreed, representing the estate of the decedent at the time of his death.

Modified and affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.